**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0871-WJM-NRN

BROOKSHIRE DOWNS AT HEATHERRIDGE CONDOMINIUM ASSOCIATION, INC.,
a Colorado corporation,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY, a foreign corporation,

    Defendant.

---

**ORDER DENYING DEFENDANT'S RULE 702 MOTIONS AND
RESETTING CASE FOR TRIAL**

---

Plaintiff Brookshire Downs at Heatherridge Condominium Association, Inc. ("Plaintiff") sues Defendant Owners Insurance Company ("Defendant") for breach of insurance contract and unreasonable delay or denial of insurance benefits under Colorado Revised Statutes §§ 10-3-1115 and -1116. (*See* ECF No. 1.) Before the Court are two motions challenging expert evidence: Defendant's Motion to Limit the Testimony of Craig Dixon Per F.R.E. 702 (ECF No. 56), and Defendant's Motion to Preclude the Testimony of Steve Patrick Per F.R.E. 702, or in the Alternative, Limit the Testimony of Steve Patrick (ECF No. 62). For the reasons explained below, both motions will be denied.

**I. BACKGROUND**

The Brookshire Downs at Heatherridge condominiums were hit by a significant hailstorm on September 29, 2014. Plaintiff eventually made a claim on Defendant for

roof repairs. Most of the claims handling took place from the latter half of 2015 through the early months of 2017. Defendant paid to replace the roofs, or certain slopes, on some of the condominium buildings, but not all slopes or all roofs. At issue in this lawsuit is whether Defendant has lawfully denied coverage for replacing the as-yet-unreplaced slopes on condominium buildings "2120" and "2130." There is also a question of whether one of Defendant's adjusters held back a depreciation payment (which was eventually paid) with no reasonable basis.

## II. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advanc[e] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in

2

resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alterations in original).

While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

The trial court's focus under Rule 702 is on the methodology employed by an expert, not on his or her conclusions. *Bitler*, 400 F.3d at 1233. Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

### III. ANALYSIS

**A. Defendant's Challenges to Dixon's Opinions (ECF No. 56)**

1. <u>Dixon's Opinions</u>

Plaintiff hired a firm named SBSA, Inc., to evaluate whether hail damage on buildings 2120 and 2130 can be attributed to the September 29, 2014 hailstorm, and to provide a recommendation for repairing that damage. (ECF No. 56-1 at 4.) SBSA assigned an engineer, Craig Dixon, to the matter. (*Id.* at 4, 25.) Dixon visually

3

inspected the roof slopes in question and came to two conclusions: (1) the hail damage on buildings 2120 and 2130 was likely caused by the September 29, 2014 storm, and (2) complete replacement of the affected slopes was recommended. (*Id.* at 23.) Dixon elaborated on that second conclusion as follows:

> The frequency of [hail strikes observed in] four test squares laid out and analyzed is such that spot-type repairs to correct the hail-caused damage[] on the shingle roof coverings in question is not feasible. Moreover, Mr. Benglen [Plaintiff's adjuster] indicated that the existing asphalt shingles are no longer manufactured or available, which, if accurate, would render the possibility of spot-type repairs moot. Therefore, SBSA recommends full removal and replacement . . . .

(*Id.* at 15.)

At Dixon's deposition, there was significant discussion of the "Itel reports" to which Dixon had access in forming his opinion or preparing for his deposition. "An Itel report is provided by a third part[y] laboratory and determines whether a particular building material or an equivalent match is available for use in repairs." (ECF No. 56 at 6 n.1.) Defendant asked Dixon if his recommendation to completely replace the relevant roof slopes was "a function of the amount of damage to the roof, or . . . of this purported unavailability of [a matching] shingle?" (ECF No. 56-2 at 17.) Dixon responded,

> I think it's a combination of both. And especially—so I would say one part is the level of damages, and then following our review of the ITEL reports which indicate a comparable material is not available, you know, in our experience, once we get a submission like this, that—typically even no matter what the damages are, the counts, if you will, that, in our experience, is typically when a full roof covering replacement—or at least the affected slopes are replaced.

(*Id.*) The Itel report to which Dixon referred was a January 2018 report, which indeed

4

showed no matching shingle. (ECF No. 56 ¶ 15.) However, at his deposition, Defendant presented Dixon with a 2015 Itel report showing that a potential matching shingle existed at that time. (*Id.* ¶¶ 13, 16.) Dixon acknowledged that the 2015 report, which he had not seen before, could have changed his opinion "if we were looking at it from the frame of reference of [2015]," but it did not alter the opinions he actually gave. (ECF No. 56-2 at 18.)

      2.    <u>Sufficient Information</u>

Defendant first argues that Dixon's lack of knowledge that a potential matching shingle existed in 2015 shows that his opinion does not meet the Rule 702(b) requirement that it be based on sufficient facts or data. (ECF No. 56 ¶¶ 18–20.) Specifically, Defendant argues that Dixon "cannot provide a reliable expert opinion that the disputed slopes warranted complete replacement *during the claims handling*." (*Id.* ¶ 18 (emphasis added).)

The Court does not read Dixon's report to be expressing any opinion about what should have been done during the claims handling process. He opines only that the damage he observed is reasonably attributable to the September 29, 2014 storm, and that it is extensive enough to require complete replacement of the affected slopes. He then adds that "spot-type repairs" (something other than complete replacement), even if potentially appropriate, are a "moot" consideration based on the unavailability of a matching shingle. (ECF No. 56-1 at 15.)

Defendant tries to convert Dixon's opinion into something else by placing heavy emphasis (typographically and argumentatively) on Dixon's response, "I think it's a combination of both," when asked if his recommendation of total roof replacement was

5

"a function of the amount of damage to the roof, or . . . of this purported unavailability of [a matching] shingle?" (ECF No. 56-2 at 17.) Defendant claims that, through such testimony, Dixon "unambiguously states that the purported unavailability of a replacement shingle was part of the basis for his opinion." (ECF No. 61 ¶ 13.)

Defendant is grasping at straws. "I think it's a combination of both" is hardly a concrete opinion, and is far more naturally interpreted to mean precisely what Dixon said in his expert report, namely, that full replacement is needed due to the scope of the damage, and would be needed anyway because a matching shingle is no longer available.

Accordingly, Dixon's testimony is not inadmissible for lack of a basis in sufficient facts or data.

      3.    <u>Relevance</u>

Defendant further argues that an opinion based on a 2018 Itel report, rather than a 2015 Itel report, lacks relevance. Specifically, Defendant says "[i]t is not clear what relevance, if any, that this opinion has to the questions of whether [Defendant] breached its contract by not issuing payment for the two disputed slopes or whether [Defendant] acted in bad faith during the claims handling in 2015 through early 2017." (ECF No. 56 ¶ 21.)

The Court agrees that, to the extent the propriety of Defendant's conduct turns on whether a replacement shingle was available at the relevant time, Dixon's lack of knowledge about what shingles were available at the relevant time means that his opinions may not be used to make a judgment about Defendant's conduct at the relevant time. The Court nonetheless sees nothing to exclude. Dixon opines that the

hail damage resulted from the September 29, 2014 storm (an opinion Defendant does not move to exclude) and that it was extensive enough to require complete roof replacement. The latter opinion is relevant to establish Plaintiff's position that Defendant should never have considered "spot-type" replacement in the first place, which is a different question from whether a replacement shingle was available during the adjustment phase.

As to Dixon's subsidiary observation that a replacement shingle is no longer available, Defendant does not respond to Plaintiff's argument that the *present* lack of a replacement shingle supports the damages Plaintiff currently claims. (*Compare* ECF No. 60 at 6 *with* ECF No. 61 ¶¶ 17–22.)

For all these reasons, Dixon's opinions will not be excluded as irrelevant.

**B.      Defendant's Challenges to Patrick's Opinions (ECF No. 62)**

1. Patrick's Opinions

Plaintiff retained Steven Patrick, who previously worked as an insurance adjuster, to opine that Defendant adjusted Plaintiff's claim unreasonably. (ECF No. 62-1 at 1.) Patrick's report begins with a generic recitation of proper claims handling practices. (*Id.* at 1–5.) He then provides his view of how the adjustment process played out in this dispute, highlighting those things Defendant allegedly did wrong. (*Id.* at 5–6.) Following that, he summarizes Dixon's report. (*Id.* at 6–8.) Finally, he provides his opinions and a conclusion that Defendant did not reasonably adjust the claim. (*Id.* at 8–9.)

2. Methodology and Sufficient Information

Defendant notes that Plaintiff never provided to Patrick the claim file (which runs to 993 pages) or the insurance policy at issue. (ECF No. 62 at 5.) Defendant argues

that an insurance best-practices expert does not employ a reliable methodology, and does not issue an opinion based on sufficient facts or data, if he or she does not review the claim file and the policy. (*Id.* at 5–6.) This is particularly important, Defendants say, in terms of Patrick's opinion that Defendant took too long to offer a claim settlement and too long to release a depreciation payment. (*Id.* at 10–13.) Defendants argue that the delay is perfectly explainable in light of the claim file, which Patrick never read (because Plaintiff never provided it). (*Id.*)

Plaintiff responds, and Defendant does not deny, that Patrick had the "claim log," which is an abbreviated version of the claim file. (ECF No. 68 at 9.) Regardless, the Court finds that Defendant has failed to show that Patrick's lack of access to the claim file renders his report so unreliable or so lacking in data that it, or the relevant opinions, must be excluded. These sorts of alleged flaws are precisely what cross-examination is for, not pretrial exclusion.

As for lack of access to the policy itself, Patrick testified that these policies are all highly standardized and that he has frequent exposure to them. (*See* ECF No. 68 at 10–11.) Moreover, Defendant does not argue that Patrick opined or testified in a way demonstrating that he misunderstands whatever policy language may be at issue. Accordingly, the notion that an insurance practices expert has not read the policy at issue appears to be a point for cross-examination, not exclusion.

3. Relevance and Helpfulness to the Jury

Defendant faults Patrick for citing "no specific laws, regulations, or caselaw from the State of Colorado or otherwise, to support what he claims are insurance industry standards and practices." (ECF No. 62 at 7.) Defendant therefore argues that Patrick's

opinions will be irrelevant, or at least not helpful to a jury. (*Id.* at 7–8.)

It is true that Patrick relies on what he deems to be national standards for insurance adjustment. The fact that legal authority in Colorado may present nuances to those national standards (Defendant does not point out what these nuances might be) does not make Patrick's opinions irrelevant or unhelpful, but only subject to attack. The jury will be free to judge Patrick's credibility, including his explanation for why he did not research Colorado law specifically on this matter.

4. Policy Interpretation

One of Patrick's opinions is that Defendant unreasonably held back a depreciation payment because Defendant's employee invoked a policy provision that had no obvious relevance to the claim Plaintiff was pursuing. (ECF No. 62-1 at 5–6.) Defendant argues that this is impermissible testimony about matters of law, *i.e.*, an interpretation of the contract. (ECF No. 62 at 13.)

Under the circumstances, Defendant is incorrect. Patrick's opinion is based on his view that the policy is impossible to misunderstand on this point and so Defendant's adjuster could not have been acting reasonably. Patrick also points out that the portion of the policy the adjuster quoted to Plaintiff was an incomplete quotation, further strengthening Patrick's opinion that the adjuster was not acting reasonably. If the interpretation of this policy provision truly was a disputed issue of law (*i.e.*, what the policy language means), the Court would have expected Defendant to have moved for summary judgment on the matter, but Defendant did not. Accordingly, Patrick is free to argue that the words of the policy are obvious enough that misapplication or misrepresentation of them leads to an inference of unreasonable conduct. Defendant is

9

free to argue otherwise. This is not a matter for exclusion.

  5. <u>Information Drawn from Dixon's Findings</u>

As noted, Patrick's opinion contains a summary of Dixon's findings. He concludes that summary as follows:

> It seems based upon Dixon's report, that if a truly unbiased adjuster would have likewise conducted a thorough investigation of the loss, . . . [the adjuster] would have likewise conducted a thorough investigation of the loss, . . . [the adjuster] would have given the insured the benefit of the doubt and recommended [full replacement on all roof slopes].

(ECF No. 62-1 at 8.) Patrick also opines that offering to replace some slopes but not others was "inconsistent with the damage present, and was unreasonable." (*Id.*)

Defendant objects that Patrick cannot offer an opinion about Dixon's opinion, and he cannot offer any opinion of his own about the scope of roof damage. (ECF No. 62 at 13–14.) The Court agrees in the abstract, but does not read Patrick as offering those sorts of opinions. He is obviously *assuming* the accuracy of Dixon's report and making conclusions about reasonableness under that assumption. Accordingly, the Court once again sees nothing to exclude. However, the Court will readily sustain objections at trial to the extent Patrick's trial testimony presents Dixon's findings as Patrick's own, rather than as assumptions, or if Patrick recapitulates Dixon's findings more than necessary to explain the basis for his (Patrick's) opinions regarding reasonableness.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Limit the Testimony of Craig Dixon Per F.R.E. 702 (ECF No. 56) is DENIED;

10

2. Defendant's Motion to Preclude the Testimony of Steve Patrick Per F.R.E. 702, or in the Alternative, Limit the Testimony of Steve Patrick (ECF No. 62) is DENIED;

3. Having disposed of all matters that prevented this case from going to trial on the previous trial setting (*see* ECF Nos. 79, 89, 93), the Court hereby SETS this case for a 5-day jury trial to begin on **November 4, 2019 at 8:30 a.m.**, with a Final Trial Preparation Conference on **October 17, 2019 at 2:00 p.m.**, both in Courtroom A801; and

4. Counsel are directed to this Court's Revised Practice Standards to ensure compliance with all deadlines triggered by the dates of the Final Trial Preparation Conference and Trial. In so doing, the parties are strongly encouraged to take advantage of the "Trial Preparation Conference & Pretrial Checklist" available at http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonWilliamJMartinez.aspx.

Dated this 15th day of March, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge